## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| GLEN A. WITHAM, | ) |
| | ) |
|      Plaintiff | ) |
| | ) |
| v. | )  2:12-cv-00146-NT |
| | ) |
| CORIZON, INC., et al.., | ) |
| | ) |
|      Defendants | ) |

## ORDER TERMINATING SHOW CAUSE (ECF NO. 7)
## RECOMMENDED DECISION ON MOTION TO DISMISS (ECF NO. 6)
## AND MOTION TO REMAND (ECF NO. 9)

Glen Witham, currently a prisoner at the Maine State Prison, was seriously injured in an automobile accident that occurred when he was trying to avoid apprehension by law enforcement officers.  The details of the genesis of his injuries are recounted in companion litigation, Witham v. Androscoggin County Sheriff's Office, 2:12-cv-00078-JAW.  Suffice it to say that a motor vehicle chase ended badly for Mr. Witham and he was hospitalized with serious injuries requiring surgery prior to his incarceration.  This lawsuit is a prison conditions case in which Witham claims that Corizon, Inc., Dr. Joseph Shubert, and Health Services Administrator Brian Castonguay, R.N., all demonstrated deliberate indifference to Witham's serious medical needs in violation of the United States Constitution.  Currently pending before the Court are my Order to Show Cause, (ECF No. 7), Witham's Motion to Remand (ECF No. 9) and the defendants' Motion to Dismiss (ECF No. 6).  I now terminate the Order to Show Cause and I recommend that the Court deny the motion to remand and grant the motion to dismiss.

### THE ORDER TO SHOW CAUSE

This case had a confusing procedural history in the state court that is set forth in the Order to Show Cause.  (See ECF No. 7.)  The removed complaint, date stamped as filed in Knox

County Superior Court on February 28, 2012, and removed to this Court on May 1, 2012, went through a number of iterations in the state court. The matter did not come to my attention until June 12, 2012, when the Court referred for a recommended decision what appeared to be an unopposed motion to dismiss. A review of this Court's docket since June 12, 2012, reveals that the case became even more confused since removal, but at least at this point there is a logical chronology to the bob and weave necessitated by Witham's frequent and often irrelevant or inappropriate filings. The purpose of the Order to Show Cause was to obtain from defendants an explanation of why they waited to remove this case until more than two full months after they became aware it had been filed.

In their response to the Order to Show Cause the defendants have explained that they were as confused as I was about which complaint the state court was treating as the operative pleading for purposes of service and response. Defendants have explained, and the record supports their explanation, that they did not attempt to delay or avoid service and were merely trying to ascertain which of Witham's complaints filed with the state court was to be treated as the operative pleading for purposes of removal. I am satisfied that the delay associated with the removal has not prejudiced Witham and that in the circumstances of this case the removal was timely because it was made within 30 days of the defendants receiving notification of the state court's March 27, 2012, ruling.[1] Normally the factual circumstances regarding a notice of removal are easily ascertained from the state court docket, but in this case it is really impossible to positively know when the defendants received the necessary information about which document was being treated as the operative complaint or even when the operative complaint

---

[1]     The removal did not occur until May 1, 2012, but other documents indicate that receipt of the Court's March 27 Order likely occurred on or about April 10, 2012.

was actually accepted on the state court docket.  Based upon these circumstances, the Order to Show Cause is terminated.

### THE MOTION TO REMAND

On June 14, 2012,[2] Witham filed a motion to remand this matter to state court alleging that the case was removed in bad faith and that the removal is unfair because the defendants will have certain unspecified defenses available to them under the Prisoner Litigation Reform Act, which defenses would not be available in state court.  (I presume Witham is referencing a potential evidentiary dispute about whether or not he has exhausted administrative grievance procedures pursuant to 42 U.S.C. § 1997e (a).  See Brief of the United States re: Notice of Constitutional Question, ECF No. 27.)  I note first that Witham's motion to remand is untimely because pursuant to 28 U.S.C. § 1447 he had thirty days from May 1, 2012, to file the motion to remand in this Court.  However, even if the motion had been timely filed, Witham offers no substantive reason that would support remand of this case and thus I will consider his motion on its merits and recommend that it be denied on that basis.

Clearly this Court has federal subject matter jurisdiction.  Witham makes it plain that his complaint is one alleging that the defendants were deliberately indifferent to his serious medical needs, a federal constitutional deprivation.  Witham alleges Corizon has a policy of refusing to provide surgeries that are medically necessary in order to save dollars and that Shubert and Castonguay are somehow complicit in this practice.  If Witham is also alleging a state tort claim for medical malpractice as is suggested by his memorandum in opposition to the Motion to Dismiss (ECF No. 8-1 at 5), this Court has supplemental jurisdiction to dispose of that claim as well.  Nevertheless, my review of the complaint does not suggest that Witham has properly pled

---

[2]        The motion (ECF No. 9) is dated May 12, 2012, but was not received in this Court until June 14, 2012. Witham offers no explanation for the delay in filing.

a state medical malpractice claim in any event because of his failure to comply with the Maine Health Security Act, 24 M.R.S. §§ 2851 et seq., which requires prelitigation screening by an approved panel.

As to the defendants' bad faith in removing the action, I can find none. As I explained in conjunction with the Order to Show Cause, Witham himself contributed to the earlier confusion about which of his complaints was actually the operative pleading and the defendants reasonably waited until they had a ruling from the state court in order to insure that the complaint they removed was indeed the operative pleading. Witham's second basis for remand, that this Court will follow the statutory directives of the PLRA as those directives have been interpreted by the United States Supreme Court, is simply not a valid basis for remanding the case to state court. I recommend the Court deny the motion to remand.

### THE MOTION TO DISMISS

In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff so long as they are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Id.</u> (citing and quoting <u>Twombly</u>, 550 U.S. at 555).

Additionally, because Witham is a pro se litigant, his complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). As a pro se litigant, his pleadings also may be interpreted in light of supplemental submissions, such as his responses to the motion to dismiss. <u>Gray v. Poole</u>, 275 F.3d 1113, 1115 (D.C. Cir. 2002); <u>Wall v. Dion</u>, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

**A.     Witham's Allegations**

The facts alleged in Witham's Verified Complaint (ECF No. 1-1) and in the numerous attachments and exhibits he has incorporated into his allegations paint the following picture regarding the healthcare Witham has received since his incarceration in June 2010. On May 12, 2010, Plaintiff incurred personal injuries in an automobile accident for which he was admitted to Central Maine Medical Center in Lewiston, Maine for treatment. (<u>Id.</u>, ¶ 1.) Upon discharge from the hospital, Plaintiff was placed in a rehabilitation center for non-weight-bearing physical and occupational therapy. (<u>Id.</u> ¶¶ 3-4.) Approximately one week later, Plaintiff was incarcerated and was sent to the prison infirmary, where he remained classified as partial-weight-bearing until August 5, 2010. (<u>Id.</u> ¶¶ 6-8.) On August 11, 2010, three months after the May accident, Plaintiff was released from the infirmary and was cleared to begin ambulating with a walker. (<u>Id.</u> ¶ 9.) Plaintiff claims he noticed pain in the fifth toe of his left foot at this time, in early August 2010. (<u>Id.</u> ¶ 10.)

On September 20, 2010, Plaintiff was sent for a follow-up consultation with Orthopedic Surgeon David Brown, during which Plaintiff discussed his left toe pain. (<u>Id.</u> ¶ 11.) Dr. Brown took x-rays of the left foot and discovered a previously undiagnosed dislocation in the fifth

metatarsal joint.  (Id.)  Dr. Brown's treatment note indicates a diagnosis of "[left] 5 toe chronic dislocation," with a recommendation for progressive strength and endurance training.  (Provider Consultation Report, ECF No. 3-11.)  The follow-up section of the note states:  "PRN. Can f/u as needed for [left] 5th toe MTPJ."  (Id.)  There are no other treatment recommendations in Dr. Brown's note, but Witham recounts that Brown verbally told him that he would not recommend surgery unless the pain continued on a daily basis.  According to Witham Dr. Brown advised him "this particular area isn't the best for surgery."  (Verified Compl., ¶ 11.)

In the year following the September 20, 2010, consultation with Dr. Brown, Plaintiff was seen by the medical department for a number of medical and medication issues.  (See Letter from Kim Robbins, Health Services Coordinator, ECF No. 4-2.)  During this time, however, Plaintiff does not allege that he informed the medical department of any toe pain or mobility deficiencies.  (See id.)  Rather, in an attempt to explain the absence of documented toe pain during this time period, Plaintiff alleges that "he knew there was nothing that could be done except the surgery."  (Verified Compl. at ¶ 14.)  Witham developed a "hitch" to his walk, but continued to ambulate freely and perform work in the kitchen at the minimum security facility to which he was transferred.  (Id. ¶¶ 15, 17, 18.)

In November 2010, Plaintiff requested that his pain medication Atram [sic], a generic form of tramadol, be discontinued.  (Id. ¶ 13.)  On May 11, 2011, Plaintiff returned a walking cane that was issued to him, stating that he did not need it anymore.  (See Robbins Letter ¶ 3.)  From May 11, 2011, through October 13, 2011, Plaintiff submitted no sick call slips.  (See id.)  On October 13, 2011, Plaintiff submitted a sick call slip to the medical department requesting that the bottom bunk restriction be removed from his Physical Activity Limitation Form ("PAL").  (See id.)

6

On October 20, 2011, during his visit with Nurse Practitioner Sue Ferra, Plaintiff again requested the removal of the bottom bunk restriction and he raised complaints of pain in his fifth toe on his left foot.  (Ferra Progress Notes ¶ 1, ECF No. 3-4.)  According to NP Ferra's notes from that visit, she counseled him on weight loss and exercise, and reviewed Dr. Brown's orthopedic notes from September 2010.  (See id.)  Following an examination, NP Ferra's assessment of Plaintiff indicated obesity, dyslipidemia, and chronic pain in the left toe secondary to dislocation.  (See id.)  NP Ferra recommended an orthopedic follow-up for Witham.  (See id.)  Dr. Shubert reviewed the consultation request on that same date, and he indicated on the request form that he would need to "evaluate this situation before authorizing consultation" and that "[t]he 5th MP joint is very forgiving and if this is not interfering with his ADL's this can be managed conservatively."  (Consultation Request, Shubert Note, ECF No. 3-12.)

On October 27, 2011, Dr. Shubert examined Plaintiff's left fifth toe.  (Shubert Progress Notes, ECF No. 3-5.)  Dr. Shubert's progress notes from that examination indicate that Plaintiff complained of pain and pressure at the head of the fifth metatarsal secondary to an old fracture and pain with walking.  (Id.)  Dr. Shubert observed a palpable calcification at the distal head of the fifth metatarsal and swelling at the fifth MP joint, a slight callous formation from rubbing, the skin intact, no lesions, and a stiff fifth MP joint.  (Id.)  His medical assessment was that Plaintiff exhibited a "calcification 5th MP joint," which he treated by "pad[ding] forefoot with padded insole to take pressure off lateral foot.  Insole fabricated footwear discussed."  (Id.)  Following Dr. Shubert's examination, a physical therapist evaluated Plaintiff and fitted him for insoles, which were later issued.  (Robbins Letter ¶ 5.)  According to Robbins, there was no indication of the need for surgical intervention as of January 27, 2012.  (See id.)

Witham alleges that Shubert's decision was not medically based, but rather that it was made pursuant to a Corizon policy regarding budgetary concerns. (Verified Compl. ¶¶ 27, 42.) According to Witham, his surgery was labeled "elective cosmetic" by Corizon in order to avoid costs associated with the surgery. (Id. ¶ 32.) Witham alleges that issuance of extra insoles does not comport with constitutional standards regarding proper medical care. (Id. ¶ 43.)

**B.   Discussion**

Witham's complaint primarily alleges deliberate indifference to serious medical needs. Witham also references the Rehabilitation Act and the Americans with Disabilities Act in his complaint. Lastly, he alludes to state law. For reasons that follow, Witham fails to state a claim.

### 1.   *Deliberate indifference*

The denial of necessary medical care can rise to the level of an Eighth Amendment violation. See, generally Farmer v. Brennan, 511 U.S. 825 (1994);  Estelle v. Gamble, 429 U.S. 97 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (citation omitted). However, negligence and medical malpractice are not actionable as constitutional violations. Daniels v. Williams, 474 U.S. 327 (1986) (noting that 42 U.S.C. § 1983 provides a right of action for civil rights violations and cannot be used to sue correctional officials for negligence); accord Estelle, 429 U.S. at 105-06.

In Farmer v. Brennan the Court clarified that the Eighth Amendment has an objective and a subjective component. 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). In this regard, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Second, the prison official must have a "'sufficiently culpable state of mind.'"  Id. (quoting

Wilson, 501 U.S. at 297)).  In prison-conditions cases such as Witham's "that state of mind is

one of 'deliberate indifference' to inmate health or safety."  Id. (quoting Wilson, 501 U.S. at

302-303)).

       Turning first to the allegations as they pertain to Brian Castonguay, R.N., it is clear that

Witham has failed to state a claim.  Plaintiff alleges that Nurse Castonguay's role as the Health

Services Administrator makes him "automatically liable because of his supervisory position to

oversee the functions of the medical department and to make sure they are run correctly and in

accordance to policy and accordance to professional medical standards."  (Verified Compl. ¶ 36.)

He also alleges that Nurse Castonguay denied Plaintiff's surgical procedure due to the alleged

cost-cutting policy set by Corizon.  (Id. ¶ 31.)  Witham cannot maintain a section 1983 action

based on the theory of respondeat superior.  Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502

(1st Cir. 2011.  Furthermore, Witham has provided absolutely no facts alleging that Nurse

Castonguay made any medical decisions regarding his medical treatment, or even that Nurse

Castonguay ever met with or treated him.  Rather, Plaintiff appears to assert a claim against

Nurse Castonguay simply by virtue of his title as a health services administrator.  (Verified

Compl. ¶ 13.)  Although there is no question that Dr. Shubert denied the outside consultation

request at the time in favor of conservative treatment, Witham conflates Dr. Shubert's denial

with the assumption that Nurse Castonguay also denied the request simply because Nurse

Castonguay is an administrator.  Indeed, there is no allegation in the Complaint, nor could there

be, that Nurse Castonguay has the authority, training, or ability to supersede the medical

judgments of Dr. Shubert.  Absent a non-conclusory allegation that Nurse Castonguay was

subjectively aware of a serious medical condition and either ignored or deliberately failed to

attend to it, with the required culpable state of mind, Plaintiff cannot state a plausible claim against Castonguay.

Witham's complaint against Dr. Shubert fares just as poorly.  Witham alleges that he has met the subjective component of the <u>Farmer</u> test through his conclusory allegation that Dr. Shubert was motivated only by his employer's financial concerns when he determined that he would treat Witham's foot injury with a more conservative means than surgery—allegedly demonstrating the culpable mental state of "deliberate indifference to serious medical needs" as set forth in <u>Farmer v. Brennan</u>, 511 U.S. at 834.  Given the right factual matrix, a prisoner's conclusory allegation that a physician was motivated solely by his employer's financial interests in deciding upon a course of treatment could state a claim for relief, see <u>Watson v. Caton</u>, 984 F.2d 537, 540 (1st Cir. 1993) (observing that improper reasons for refusing treatment, such as that an injury occurred prior to incarceration, may result in a claim for "wanton" denial of care), but Witham's verified complaint does not allege the necessary objective facts to support a conclusion that Dr. Shubert's decision was made in the context of deliberate indifference to a serious medical issue.

According to the complaint, Dr. Shubert saw plaintiff only one time and as a result of that examination did not recommend pursuing surgery *at that time*.  He did however recommend an alternative treatment in the nature of shoe insoles.  The decision was made after Witham had spent more than one year at the prison without filing any sick call slips relating to foot pain. During that year Witham relinquished use of a cane and fought to have his lower bunk restriction lifted.  Additionally, the treating surgeon informed Witham a year earlier that surgery was not the ideal solution given the location of the injury, according to Witham's own allegations.  Given the context in which the decision occurred, Dr. Shubert's choice to forego sending Witham to an

10

orthopedic surgeon for further evaluation simply cannot be viewed as demonstrating deliberate indifference to serious medical needs.  Witham has not alleged nonconclusory facts to establish that his medical needs were sufficiently serious as to require immediate surgery or that Dr. Shubert did anything other than recommend a more conservative (and less expensive) course of treatment rather than an orthopedic consultation that might lead to surgery.

As Witham himself points out, a medical need is "serious" if a physician has diagnosed a mandatory treatment or if a lay person would easily recognize the necessity for a doctor's surgical intervention.  (Verified Compl. ¶ 47, quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)).  Objectively speaking, neither of those circumstances is present in this case.  According to Witham, Dr. Brown, the orthopedic surgeon, specifically rejected surgery a year earlier and said it would only be a last resort if the pain persisted.  To an objective lay person, the fact that Witham ambulated without his cane, albeit with a "hitch" to his gate, and performed his duties when assigned prison work for over one year would not demonstrate the need for an immediate surgery.  Thus, there is nothing within the four corners of the complaint or the attached exhibits that renders Dr. Shubert's decision objectively irrational or based upon an improper motive.  Although Witham makes conclusory allegations about ongoing pain and suffering and about the financial motivations of Shubert's employer, there are no allegations that he returned to Dr. Shubert for any follow-up care or that Dr. Shubert demonstrated deliberate indifference to a deteriorating medical condition.  Indeed, in his response to the Motion to Dismiss, Witham acknowledges that Shubert's recommendation "dimish[ed] the totality of the pain but nonetheless [has] not removed ALL pain therefore creating unwanton infliction of unnecessary pain and deliberate suffering."  (Resp. to Motion to Dismiss at 4, ECF No. 8.)  On the facts alleged by Witham, assuming them to be true, Dr. Shubert was not deliberately

indifferent to a serious medical need based solely upon his one evaluation[3] and recommendation regarding Witham.

Finally, I turn to Witham's claim against Corizon.  Witham apparently seeks to hold Corizon liable on two separate bases.  Witham asserts that Corizon, a private entity providing medical care to inmates, is liable on a respondeat superior theory for the deliberate indifference of two employees, Regional Medical Director Joseph Shubert, M.D., and Health Services Administrator Brian Castonguay, R.N.  Witham also claims that Dr. Shubert's medical decision not to authorize a consultation for his toe with orthopedic specialist Dr. Brown was due to Corizon's "policy or custom of conserving their budgetary concerns."  (Verified Compl. ¶¶ 27, 37(B), 42, 49, 50.)  As support for this conclusory statement, Plaintiff asserts that Governor Paul LePage has stated that the State needs to cut back on medical coverage and that medical treatment for corrections has an extremely high cost.  (Id. ¶ 27.)  Plaintiff also cites a November 2011 report from the Office of Program Evaluation and Government Accountability (OPEGA) alleging, generally, perceived problems with medical services and "calling on the department to continue to pursue COST CONTAINMENT."  (Id. ¶ 50 (emphasis supplied in Verified Compl).)

In order to maintain a Section 1983 claim against Corizon, Plaintiff must allege facts sufficient to hold it liable as a municipality.[4]  An underlying constitutional tort is required to

---

[3]    In a subsequent filing (Obj. to Order Denying Request to Require U.S. Attorney and ACLU to Investigate Case at 2, ECF No. 24), Witham indicates that as of July 2012, Shubert is no longer employed at the Maine State Prison.  Witham does not allege any additional contact with Shubert other than the one evaluation and resultant treatment with insoles for his shoes.  Witham relies on Sulton v. Wright, 265 F. Supp. 2d 292 (S.D.N.Y. 2003), to support his contention that Shubert's partial treatment was constitutionally deficient because it did not address the gravamen of the medical problem.  The case is inapposite.  Sulton was denied surgery for four years and during that period his condition deteriorated.  Witham sought the surgery on October 27, 2011, following a one-year period of objective improvement in symptoms, and apparently only consulted with Shubert on that one occasion.

[4]    The First Circuit has never explicitly said that a private entity such as Corizon is to be treated as a municipality for purposes of lawsuits brought pursuant to 42 U.S.C. § 1983.  See Leavitt, 645 F.3d at 504 n. 30.  Courts of Appeals in other circuits have expressly concluded that when private entities contract to provide jail inmates with medical services they are performing a function that is traditionally reserved to the state and that because they provide services that are municipal in nature they are functionally equivalent to a municipality for purposes of 42 U.S.C. § 1983 suits.  See Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999);

12

proceed under a municipal liability theory.  Where, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom.  See Kennedy v. Town of Billerica, 617 F.3d 520, 531-32 (1st Cir. 2010) (explaining the need for an underlying constitutional injury in order to impose municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  Likewise, Section 1983 jurisprudence clearly establishes that there can be no municipal liability grounded on a theory of respondeat superior. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 402 (1997) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985)).  Thus, Witham's factual allegations do not state a claim against Corizon on the basis of custom and policy or on the basis of respondeat superior. While Corizon's policy may have been improper, and the November 2011 report from the Office of Program Evaluation and Government Accountability (OPEGA) cited by Witham may have found problems, generally, with medical services and cost containment practices, those allegations do not plausibly suggest that Shubert committed a constitutional violation, a necessary prerequisite for imposing Monell liability on Corizon.

### 2.   ADA and Rehabilitation Act

Witham also alleges violations of the ADA and Section 504 of the Rehabilitation Act.  To state a claim under these federal anti-discrimination statutes, a plaintiff must allege:  (1) that he is a qualified individual with a disability;  (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against;  and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  Parker v. Univ. de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000).

---

Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997);  Street v. Corr. Corp. Am., 102 F.3d 810, 814 (6th Cir. 1996); Rojas v. Alexander's Dept. Store, Inc., 924 F.2d 406, 408-409 (2d Cir. 1990).  That other Circuits have reached this conclusion is made apparent more by implication than by explication.  See Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989);  Iskander v. Vill. Forest Park, 690 F.2d 126, 128 (7th Cir. 1982).

See also Buchanan v. Maine, 469 F.3d 158, 174 (1st Cir. 2006) ("The Rehabilitation Act and ADA do not guarantee any particular level of medical care for disabled persons.") (punctuation and citation omitted);  Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act");  Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (noting that the "ADA does not create a remedy for medical malpractice").  Witham's pleadings do not explain the nature of his ADA and Rehabilitation Act claims and this Court might fairly conclude that based on his limited showing he has abandoned any such claims.  Even if he has not abandoned the claims, his Verified Complaint fails to state a claim for a violation of either statute.

### 3.    State law claims

Finally, Witham apparently believes he has asserted claims for state torts and under the Maine Human Rights Act.  No such claim is properly pled within the Verified Complaint which is the operative pleading removed from state court.  I therefore conclude that remanding the pleading would be counterproductive and that the best course of action is for this Court to dismiss without prejudice any remaining state tort or statutory claims so Witham might return to state court by filing a new pleading that explains those allegations in the absence of the federal constitutional and statutory claims.

### CONCLUSION

Based on the foregoing analysis, I recommend that the Court grant the defendants' motion to dismiss and dismiss with prejudice all federal constitutional and statutory claims.  I also recommend, to the extent they have been pled in the Verified Complaint, that the Court dismiss without prejudice any state law claims.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

September 17, 2012                    /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge